Ragnar V. HOKANSON and Marilyn L. Hokanson, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 82–7768.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 7, 1983.

Decided Feb. 7, 1984.

---

Robert G. Burt, Burt & Hagen, P.C., Portland, Or., for petitioners-appellants.

William Wong, Asst. Atty. Gen., Washington, D.C., for respondent-appellee.

Before FLETCHER and ALARCON, Circuit Judges, and JAMESON,* District Judge.

FLETCHER, Circuit Judge:

This is an appeal from a decision of the tax court that the Hokansons were not entitled to an investment tax credit on tractor-trailer trucks they purchased for lease to a farm cooperative during 1977 and 1978. We affirm.

## FACTS

The Hokansons leased the trucks in question to North Pacific Canners and Packers, Inc. (Nor-Pac), an Oregon farm cooperative engaged in the food distribution business. In 1970, Nor-Pac had become dissatisfied with the commercial trucking companies it had been using to transport its food products to distribution points throughout the country and decided to set up its own transportation department. Because of a shortage of capital, Nor-Pac decided not to purchase its own fleet of trucks but rather to enter into a lease-employment relationship with the Hokansons.

In 1970, Ragnar Hokanson joined Nor-Pac as transportation director, in charge of managing the shipping division. The Hokansons also agreed to lease tractor-trailer trucks to Nor-Pac pursuant to a master lease agreement, which became effective on January 1, 1971.

Under the leasing arrangement, the Hokansons were to purchase on their own credit trucks needed by Nor-Pac. The master lease served as the governing instrument for all trucks acquired and leased to Nor-Pac. Schedules describing the trucks subject to the lease were periodically attached and incorporated into the master lease.

According to the terms of the master lease, each party had the right to cancel the lease each January by giving 30 days written notice, but neither party had an option to renew. Without any action on the part of either party to cancel, the lease would continue indefinitely.

At the time the parties first entered into the lease, neither was willing to make an irrevocable commitment. The Hokansons leased only three trucks to Nor-Pac in the first year, and the Nor-Pac board of directors wanted to be free to cancel the lease if the new arrangement did not prove

---

* Hon. William J. Jameson, Senior District Judge for the District of Montana, sitting by designation.

to be an improvement over the old. After the first year and each January thereafter, Hokanson reviewed the lease rates and occasionally proposed new ones. The Nor-Pac board then also reviewed the lease and determined whether to continue or modify the leasing agreement. The parties periodically amended the lease to incorporate higher lease rates. Neither party exercised the right to cancel until March of 1980, when Hokanson terminated the leasing arrangement largely because of his bad health.

In 1977 and 1978, the tax years at issue, the Hokansons purchased and then leased to Nor-Pac 18 tractor and trailer units that the parties stipulated were "new section 38 property." Nor-Pac made no loans or loan guarantees to assist the Hokansons in purchasing the trucks.

On their 1977 and 1978 federal income tax returns, the Hokansons claimed investment credits based on the units purchased and put into service in those years. The Commissioner disallowed taxpayers' investment credit claims and issued a notice of deficiency, determining that the terms of the leases for the trucks at issue were open-ended and were not realistically contemplated to last for less than 50 percent of the stipulated 8-year useful life of the trucks.

The Tax Court agreed with the Commissioner and denied the credits, ruling that the taxpayers failed to meet their burden of demonstrating that the parties realistically contemplated that the leases would terminate prior to the expiration of one-half of the useful life of the trucks. The tax court found that "the parties intended this equipment to be leased for its entire useful life" and that the annual reviews were but "periodic examinations of a continuing and indefinite lease."

## ISSUE

The Hokansons argue they are entitled to an investment credit under section 38 of the Internal Revenue Code. Section 38 allows a credit against tax for investments in certain depreciable property. 26 U.S.C. § 38 (1976). Section 46(e)(3) provides:

> A credit shall be allowed by section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if—
>
> (A) the property subject to the lease has been manufactured or produced by the lessor, or
>
> (B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, ...

26 U.S.C. § 46(e)(3).

As the tax court explained in *Ridder v. Commissioner*, 76 T.C. 867, 872 (1981), "[s]ection 46(e)(3) is a fairly technical provision which can best be understood in terms of its purpose. In general, Congress was concerned that individuals might be tempted to use investment credits to finance the acquisition and leasing of depreciable property as tax shelters," citing S.Rep. 437, 92d Cong., 1st Sess. 43–44 *reprinted in* 1971 U.S.Code Cong. & Admin.News, p. 1825. Congress established limitations on the availability of the investment credit so as to benefit only those noncorporate lessors actually using section 38 property in an active business. *Ridder*, 76 T.C. at 872. *See also Carlson v. Commissioner*, 712 F.2d 1314, 1316, (9th Cir.1983). These lessors were determined to be persons who either had themselves produced the property or had leased the property on a short term basis. *Ridder*, 76 T.C. at 872. On the other hand, Congress wanted to deny credits to purchaser-lessors who were involved merely in financing arrangements. *Id.* To exclude these lessors, section 46(e)(3)(B) denies the credit to noncorporate lessors where the lease term exceeds 50 percent of the useful life of the property. *Id.*

In this case, the availability of a tax credit depends solely on whether the terms of the leases by which the 18 trucks were placed into service were of less than 4 years duration. The taxpayers contend that the tax court improperly denied the credits because (a) the leases did in fact

terminate in less than 4 years; (b) the tax court's conclusion that the parties did not realistically contemplate termination of the leases in less than 4 years was clearly erroneous; (c) Congress did not intend these leases to be disqualified under section 46(e)(3)(B). None of these arguments has merit.

## DISCUSSION

■ The taxpayers argue first that, regardless of how long the parties expected the 18 leases to continue, the tax credits should be allowed here because the leases in fact terminated in 1980. The Commissioner asserts that, for purposes of applying section 46(e)(3)(B), the term of a lease is to be calculated on the basis of the realistic expectations of the parties at the time the lease was entered into, regardless of what eventually happened in subsequent years.

Neither the Code nor its legislative history explains whether the length of the term of a lease is to be calculated by reference to the realistic expectations of the parties or to the actual length of the subject lease. In at least two cases, the tax court has rejected the contention that the actual duration of the lease is determinative. *Ridder v. Commissioner*, 76 T.C. 867, 875 (1981) (no credit where truck with 6-year useful life leased on indefinite basis is demolished in less than 3 years); *Bloomberg v. Commissioner*, 74 T.C. 1368, 1371 (1980) (no credit where 5-year lease of property with 7-year useful life is cancelled in third year). We agree that the "realistic contemplation" of the parties is the correct test for calculating the length of a lease term for purposes of section 46(e)(3)(B).

To make the availability of the credit contingent on the actual duration of a lease would hamper the administrative processes and enforcement mechanisms of the Internal Revenue Service. Even though taxpayers would, as they must, take the credit in the first year property is placed into service,[1] the IRS would not be certain as to the validity of any given credit until the lease had *actually* terminated or 50 percent of the property's useful life had run. This problem would be especially burdensome on the IRS because the "useful life" of section 38 property can be as long as several decades.

Several of the other significant factors upon which availability of the investment tax credit depends relate solely to the facts and circumstances in existence in the first year the property is put in service. Congress explicitly provided, for example, that the credit is available to short-term noncorporate lessors only if the depreciation deductions for "the first 12 months after the date on which the property is transferred to the lessee" exceed 15 percent of the rental income of the property. 26 U.S.C. § 46(e)(3)(B). Similarly, Congress provided that the base to which the term of the lease is to be compared is the "useful life of the property." *Id.* The regulations make quite clear that this "useful life" is to be determined hypothetically at the time the property is first put into service and not later when the useful life has expired. *See* Treas.Reg. § 1.48–1(a) (1977) (section 38 property is "property ... which has an estimated useful life of 3 years or more (determined as of the time such property is placed in service)"). The focus on determination in respect to all these factors in the first year the property is in service supports the view that the term of the lease likewise be determined by reference to the realistic contemplation of the parties at the time the property is first put into service.[2]

---

1. *See* Treas.Reg. § 1.46–3(d)(4)(i) (1977) ("The credit allowed by section 38 with respect to any property shall be allowed only for the first taxable year in which such property is placed in service by the taxpayer.").

2. *Xerox Corp. v. United States,* 656 F.2d 659, 228 Ct.Cl. 406 (1981), cited by the taxpayers, does not compel a contrary result. In that case, Xerox leased numerous copying machines to the United States government under leases which permitted both parties to cancel at any time after 15 days' notice. The lessor sought to obtain tax credits for the machines, despite the statutory prohibition on tax credits for property used by the United States, on the ground that the property was leased to the United States on a casual or short-term basis. 656 F.2d at 666. The Court of Claims, adopting the rule espoused

The taxpayers further argue that, even if the term of a lease is to be determined by reference to the realistic contemplation of the parties at the time the property is first put into service, the tax court erroneously concluded that the parties did not realistically contemplate termination of the 18 leases in less than 4 years.

■ In a tax court proceeding, the burden is on the taxpayer to demonstrate that the Commissioner's deficiency determination was incorrect. *Rockwell v. Commissioner*, 512 F.2d 882, 885 (9th Cir.), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975); Tax Court Rule 142(a), 26 U.S.C.App. Tax Court R. 142(a) (1976). Consequently, the burden was on the Hokansons to show affirmatively that the parties realistically contemplated that the terms of the leases would in fact be less than 4 years.

■ Whether the parties realistically contemplated that the leases would last only one year, as the taxpayers contend, or for the entire useful life of the trucks, as the Commissioner argues and the tax court found, is a purely factual question. The tax court's factual determination must stand unless it is clearly erroneous. *See Commissioner v. Duberstein*, 363 U.S. 278, 291, 80 S.Ct. 1190, 1199, 4 L.Ed.2d 1218 (1960); *Carlson v. Commissioner*, 712 F.2d 1314 (9th Cir.1983). A factual finding of the tax court may be upset only if the reviewing court is left "with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

■ The record contains evidence from which the tax court could conclude that the parties intended the longer leases. Hokanson quit his previous job and moved with his wife from Texas to Oregon to begin his relationship with Nor-Pac. The Hokansons' personal assets were tied to the bank loans for the purchase of the trucks. Not only did the Hokansons lease a fleet of trucks to Nor-Pac, but Ragner Hokanson also managed Nor-Pac's trucking operation as an employee of Nor-Pac until 1978. By 1977, Nor-Pac had relied on the Hokansons for six years; cancellation of the leases would have required it to resort to the commercial carriers that it had formerly found unreliable and expensive. As the tax court noted, this arrangement "bespeaks substantial and long-term undertakings by each party."

The parties' practice under this arrangement supports the tax court's conclusion. Throughout the years prior to the placement of the 18 trucks into service in 1977 and 1978, new trucks were added to the master lease and obsolete, worn-out trucks were removed from the leasing arrangement. Before 1977 and 1978, however, not a single one of the dozens of leases entered into was terminated prior to one-half of the useful life of the subject truck.

The bank officer who approved the loans for the purchase of the 18 trucks testified that, based on his understanding of the arrangement between Nor-Pac and the Hokansons, the leases would continue indefinitely, even though there was a possibility of a termination each year. Both parties reexamined the master lease each year. Yet there is no evidence that there was ever any discontent over the lease rates the Hokansons proposed or that prior to the years 1977 and 1978 Nor-Pac or the Hokansons seriously contemplated terminating the leasing arrangement. Hokanson presented the annual proposals for con-

---

in *Stewart, IV v. United States*, 77–2 U.S. Tax Cas. (CCH) ¶ 9648 (D.Neb.1977), held that "actual duration of use of the property in question"—not "the minimum enforceable duration of the lease"—controlled the question of whether or not the lease was short-term and denied the credits. 656 F.2d at 668.

The question presented in *Xerox* was not whether first-year expectations or actual dura-

tion should control, but rather simply whether a lease term specifying a minimum duration should pose a "per se" barrier to consideration of the actual practice or expectations of the parties. As the *Xerox* court did, we hold that a minimum duration specified in a lease is not the controlling factor in determining the length of the term of the lease for section 38 purposes.

tinuation not as an outsider but as the head of Nor-Pac's transportation department.

The tax court could reasonably have found, as it did, that the annual reviews were not annual renegotiations of one-year leases, but rather were "periodic examinations of a continuing and indefinite lease." On the whole record, the tax court's conclusion that the taxpayers did not show that the parties realistically contemplated the leases to terminate in four years or less is not clearly erroneous.

The taxpayers finally argue that the tax court decision should be reversed because, even if they do not fit within the requirements of section 46(e)(3)(B), Congress did not intend the exclusion to be denied to them, because they were actually in the business of leasing trucks and were not mere passive investors. The argument must be rejected.

■ There is no dispute here that the taxpayers are not the sort of passive investors against whom section 46(e)(3)(B) was directed. However, any tax credit is purely a matter of legislative grace; provisions allowing a deduction do not turn on equitable considerations. *See Deputy v. Du-Pont*, 308 U.S. 488, 493, 60 S.Ct. 363, 366, 84 L.Ed. 416 (1940). A deduction should be allowed only where there is "clear provision therefor." *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1932). Where the language of the statute plainly denies the credit, the credit may be allowed only if the legislative history contains "clear contrary evidence of legislative intent." *National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974).

■ In this case, regardless of the fact that taxpayers were in the leasing business, they do not fall within the provisions of section 46(e)(3) of the Internal Revenue Code. There is no "clear contrary evidence of legislative intent" that a lease not realistically contemplated to last for less than 50 percent of the useful life was not to be disqualified simply because the lease in fact terminated within the period or because the lessor was not in fact a passive investor. Congress chose two hard-and-fast tests, sacrificing some degree of equity for predictability and ease of administration. Where, as here, the taxpayers do not meet the literal requirements of the Code, the credit should be denied. *See Kleinsasser v. United States*, 707 F.2d 1024, 1030 (9th Cir.1983) ("We cannot put an equitable gloss on the clear language of the Internal Revenue Code.").

The judgment of the tax court is affirmed.