WILEY C. SANDERS, JR. and GLORIA J. SANDERS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sanders v. Commissioner
Docket No. 23503-82.
United States Tax Court
T.C. Memo 1984-511; 1984 Tax Ct. Memo LEXIS 162; 48 T.C.M. (CCH) 1215; T.C.M. (RIA) 84511; September 25, 1984. Alan E. Rothfeder,Jo Karen Parr,Lester C. Sanders, and Nicholas J. Cervera, for the petitioners. John B. Harper and Helen C. Theo, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in *163 petitioners' Federal income tax for the calendar years 1975, 1976 and 1977 in the amounts of $13,776.85, $32,873.15 and $52,132.96, respectively. [1]
The only issue for decision is whether petitioners are entitled to investment tax credits under section 46(e)(3)(B)[2] for trucks and trailers leased to a wholly owned corporation. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, Wiley C. Sanders, Jr., and Gloria J. Sanders, husband and wife, who resided in Troy, Alabama, at the time of the filing of the petition in this case, filed joint Federal income tax returns for the calendar years 1975, 1976, 1977, 1978, 1979, 1980, 1981 and 1982. At all times relevant to this case,Wiley C. Sanders, Jr., (petitioner) was the sole stockholder *164 of an Alabama corporation, Wiley Sanders Truck Lines, Inc. (WSTL).The corporation has been in business since 1972, has its principal offices in Troy, Alabama, and is regulated by the Interstate Commerce Commission and the Alabama Public Service Commission. Petitioner was president of WSTL in 1978 and part of 1979. He was also chairman of the board throughout those years. WSTL is a common carrier engaged in the interstate hauling of cargo for shippers. WSTL filed its Federal corporate tax returns for fiscal years ending May 31, and for fiscal years ending May 31, 1978, and May 31, 1980, filed its returns under the name of Wiley Sanders, Inc.
WSTL had investment credits for its fiscal years ending May 31, 1978, 1979 and 1980 as follows: Investment Credit
Tentative
Fiscal Year
Carryover from
Investment
Investment
Ending
Prior Year(s)
Credit
Credit *
5/31/78
$116,859
$40,335
5/31/79
76,523
96,967
64,775
5/31/80
24,232
40,386
25,504
WSTL was unable to claim a carryback of investment credits to fiscal years ending May 31, 1975, 1976 and 1977 because *165 investment credits had been used against all available preinvestment credit tax liability for those years. Sanders Lead Company, Inc., an Alabama corporation, is engaged in the lead smelting business and has its principal place of business in Troy, Alabama. The stock of Sanders Lead Company is owned as follows: Stockholder
Percent of Ownership
Wiley C. Sanders, Sr.
45 percent
Wiley C. Sanders Jr. (Petitioner)
45 percent
George Saunders
10 percent
In 1978, WSTL needed additional operating authority from the Interstate Commerce Commission to properly service its shippers and additional trucks and trailers to implement the increased operating authority. In 1978, WSTL did not have the cash available to purchase needed equipment and petitioner was unwilling to personally guarantee any financing obtained by WSTL. In addition, there was a limit on the number of vehicles WSTL could purchase on credit without adversely affecting its ability to borrow money for the company's operating expenses. Although WSTL had leased some equipment on 30-day leases, it had difficulty leasing the necessary equipment because hauling lead acid batteries for Sanders Lead *166 Company had caused corrosive damage to some of the leased equipment and had resulted in litigation. In order to supply WSTL with the necessary equipment petitioner purchased trucks and trailers from various dealers and in October 1978 began leasing them solely to WSTL under the name Southern Truck Leasing, a sole proprietorship. [3] The total cost of the trucks and trailers purchased by petitioner was $1,903,430 in 1978 and $4,606,182.18 in 1979. At the time of the trial, November 1983, petitioner continued to lease to WSTL equipment purchased in 1978 and 1979. Subject to the final decision of petitioner, management personnel at WSTL determined the number of trucks and trailers *167 that were needed to operate the business satisfactorily. Petitioner alone decided whether Southern Truck Leasing should purchase trucks and trailers and selected the type of equipment to be purchased. Petitioner also determined which equipment Southern Truck Leasing would lease to WSTL. Petitioner purchased the trucks and trailers on credit and entered into installment payment agreements with the sellers.No downpayments were made on the purchases. Petitioner entered into security agreements with various lending institutions and the trucks and trailers were pledged as collateral. The payment of certain notes was guaranteed by Sanders Lead Company and/or WSTL. Payments on the loans were only made by petitioner. Southern Truck Leasing had office space in Sanders Lead Company's offices, but Southern Truck Leasing paid no rent to Sanders Lead Company from 1978 through 1982. The only employee of Southern Truck Leasing was a bookkeeper. As a result of the purchases, petitioner's inventory of trucks and trailers was as follws: Existing
Year-End
Year
Inventory
Purchases
Inventory
Trucks
1978
32
32
1979
32
59
91
Trailers
1978
54
54
1979
54
179
233
*168 The leases of new trucks and trailers by petitioner to WSTL were for 1 year, and these leases did not include renewal options. The useful life of the trucks and trailers for depreciation purposes was 5 years. When the original leases were executed, successive leases were not executed by petitioner and WSTL. In pertinent part the representative lease agreement for trucks and trailers provides: LEASE
THIS AGREEMENT made and entered into on this the     day of    , 19  , by and between Wiley C. Sanders, Jr., d/b/a Southern Truck Leasing ("LESSOR"), and Wiley Sanders Truck Lines, Inc., an Alabama corporation, with its principal place of business in Troy, Alabama ("LESSEE"). * * * 2. TERM AND RENT
This lease is for the term twelve (12) months commencing    , 19  , and ending twelve (12) months from date for the total rent of $    , to be paid by the Lessee to the Lessor in twelve (12) equal monthly installments of $     each on the 30th day of each month during the term hereof. Notwithstanding anything to the contrary herein contained, the rent for the first calendar month of the lease shall be prorated based upon a daily rental, and *169 the rent for the last calendar month shall be the balance remaining to be paid on the total rent established herein. Interest at the rate of 8% per annum shall be paid on each delinquent installment of refnt from a date seven days after the due date for the period such payment remains past due, together with reasonable charges and expenses for collecting such delinquent installments, and this shall be in addition to all other remedies that the Lessor may have against the Lessee for default in the payment of rent. The terms of the leases provided that all operating expenses (except certain taxes, licenses and insurance) were to be paid by the lessee. At the expiration of an existing lease, additional 1-year leases were entered into by petitioner and WSTL for the trucks and trailers that were acquired new in 1978 and 1979. The rental charge, but not the terms of the lease, was s sometimes changed with each successive lease. Except for trucks and trailers sold by petitioner because they were no longer desirable for use in WSTL's operation, new 1-year lease agreements were entered into for all trucks and trailers. At the stated termination of a lease, WSTL did not seek alternative *170 leasing arrangements. [4]
Petitioner's sole properietorship, Southern Truck Leasing, received rental income from WSTL for the use of the trucks and trailers which totaled $139,079.56 for calendar year 1978 and $1,536,576 for calendar year 1979. All rents represented fair rental values. Petitioner sold trucks and trailers which his wholly owned corporation did not continue to lease in 1980, 1981 and 1982. When the operating needs of WSTL dictated an equipment change, petitioner sold the equipment which WSTL no longer needed. He did not lease or attempt to lease that equipment to other persons. The following chart shows the disposition and date of disposition of trucks and trailers by petitioner's sole proprietorship, Southern Truck Leasing: Vans, Flatbeds,
Date of Sale
Tractors
Trailers Model Year
12/4/80
8
1980
12/4/80
5
1979
12/4/80
3
1978
12/4/80
36
1979
12/4/80
6
1978
8/27/80
15
1978
8/27/80
24
1979
10/15/81
30
1980
4/30/82
20
1978
7/22/82
6
1980
8/5/82
14
1980
8/12/82
3
1978
8/12/82
1
1979
9/2/82
3
1979
9/2/82
3
1980
9/15/82
3
1979
9/15/82
6
1980
9/23/82
6
1980
9/23/82
3
1979
9/30/82
3
1980
9/30/82
6
1979
10/14/82
4
1978
10/14/82
2
1978
10/14/82
6
1979
10/14/82
11
1980
10/14/82
3
1980
10/28/82
10
1979
*171 Petitioner's records showed a taxable gain from these sales in 1980 of $4,794.43, a loss in 1981 of $22,904.50 and a gain in 1982 of $46,841.64. As a result of the purchases of trucks and trailers in 1978 and 1979, petitioner claimed tentative investment credits of $126,882 andf $309,548 in 1978 and 1979, respectively. Petitioners filed a Form 1045 "Application for Tentative Refund" based on the carryback of unused investment tax credits of which the amounts claimed on trucks and trailers bought for lease to WSTL were $13,776.85, $32,873.15 and $52,132.96, respectively, to offset their 1975, 1976 and 1977 income tax liabilities. Respondent allowed the claimed tentative refund. Respondent in his notice of deficiency determined that petitioners were not entitled to the claimed investment tax credits with respect to the trucks and trailers leased to WSTL and, therefore, the amounts of $13,776.85 for the year 1975, $32,873.15 for the year 1976, and $52,132.96 for the year 1977 were erroneously refunded to petitioners and constituted deficiencies in petitioners' income tax for these respective years. Respondent stated as the reason for his determination that petitioners *172 were not entitled to the investment tax credit as a noncorporate lessor on the property acquired during the tax years 1978 and 1979 since they had failed to satisfy the requirement of section 46(e)(3)(B) because in reality the terms of the leases were indefinite and in excess of 50 percent of the useful life of the property. OPINION Section 38 allows a credit against tax for investments in certain depreciable property in an amount determined under section 46. However, section 46(e)(3) provides, in part: (e) Limitations with Respect to CertainPersons.-- * * * (3) Noncorporate lessors.--A credit shall be allowed by section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if-- * * * (B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, and for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of the deductions with respect to such property which are allowable to the lessor *173 solely by reason of section 162 (other than rents and reimbursed amounts with respect to such property) exceeds 15 percent of the rental income produced by such property. The parties agree that the trucks and trailers leased to WSTL qualify as "section 38 property." The equipment was depreciable, tangible personal property with a useful life of at least 3 years. The parties also agree that the "section 162" deductions exceeded 15 percent of the rental income produced by the property for the first 12 months after the date it was transferred to the lessee. The parties have stipulated that the useful life of the trucks and trailers was 5 years at the time of acquisition. The disagreement between the parties is whether petitioner's sole proprietorship, Southern Truck Leasing, leased trucks and trailers to WSTL, petitioner's wholly owned corporation, for more than 50 percent of the 5-year useful life of the equipment, thereby disqualifying petitioner for an investment credit under the provision of section 46(e)(3)(B). Section 108 of the Revenue Act of 1971, Pub. L. 92-178, 85 Stat. 497, added section 46(e)(3) to the Code. [5] The Senate report accompanying the bill stated *174 in part: The Committee is concerned, however, as was the House, that the restoration of the credit could once again make leasing arrangements motivated largely by tax reasons quite attractive. The committee agrees with the House that it is appropriate to impose limitations on the availability of the investment credit to individual lessors (and other noncorporate lessors). * * * * * * the bill provides, in general, for the allowance of the credit in the case of short-term leases since in these cases the leasing activity constitutes a business activity of the taxpayer, rather than a mere investment, i.e., a financing arrangement. [S. Rept. 92-437, 92d Cong., 1st Sess. 43-44 (1971), 1972-1 C.B. 559, 583.] The clear intent of Congress was to deny the benefits of the investment credit to noncorporate lessors who have merely retained passive investment or financing risks as opposed to having assumed the risks and obligations usually associated with an active business. Carlson v. Commissioner,79 T.C. 215, 221 (1982), affd. 712 F.2d 1314 (9th Cir. 1983); *175 Ridder v. Commissioner,76 T.C. 867, 872 (1981). In order for petitioner to qualify for the investment credit, he must show that the terms of the leases were less than 50 percent of the useful life of the trucks and trailers. Section 46(e)(3)(B). See generally, Ridder v. Commissioner,supra;Bloomberg v. Commissioner,74 T.C. 1368 (1980). It is petitioner's position that the leases were 1-year leases in accordance with their stated terms. Respondent takes the position that realistically and substantively the terms of the leases were not limited to their 1-year stated terms but that the leases were of indefinite duration and therefore for more than 50 percent of the 5-year useful life of the property. Respondent argues that the facts in this case show that at the time the leases were entered into it was intended and understood that WSTL would lease the trucks and trailers from petitioner for as long as the equipment was useful in its business or for the useful life of the equipment. [6]
*176 In support of the position that the stated lease terms should be disregarded where the facts show that in reality the parties to the lease intended its terms to be indefinite, respondent relies on cases that deal with the period over which a lessee can depreciate or amortize the cost of improvements made on leased property. G.W. Van Keppel Co. v. Commissioner,295 F.2d 767 (8th Cir. 1961), affg. a Memorandum Opinion of this Court; Highland Hills Swimming Club, Inc. v. Wiseman,272 F.2d 176 (10th Cir. 1959). Petitioner takes the position that he has met the explicit statutory requirements of section 46(e)(3)(B) and therefore is entitled to the investment tax credit. Petitioner states the lease terms in theinstant case satisfy the 50 percent requirement of section 46(e)(3)(B) because the leases had a stated 1-year duration and contained no options for renewal or provisions for extension or carryover at the expiration of their fixed terms. Petitioner argues it was reasonably foreseeable that the leases would terminate after 1 year when WSTL's equipment needs changed. Petitioner contends that the cases relied on by respondent *177 involving the amortization of improvements which a lessee made to leased property are based on judicial tests which are inapplicable to the instant case that addresses an unrelated area of law. On our view, respondent properly construes the leases in the instant case to be of indefinite duration. In determining whether a lease is of indefinite duration rather than limited to the terms stated in the lease, all facts and circumstances that throw light on the transaction should be considered. Highland Hills Swimming Club, Inc. v. Wiseman,supra at 179; Buddy Schoellkopf Products, Inc. v. Commissioner,65 T.C. 640, 656 (1975). The lease term is indefinite if there is a reasonable certainty that the lessee will continue leasing the property beyond the period stated in the lease. [7]G.W. Van Keppel Co. v. Commissioner,supra;Standard Tube Co. v. Commissioner,6 T.C. 950, 955 (1946). *178 The length of a lease term for purposes of section 46(e)(3)(B) is properly determined by the "realistic contemplation" of the parties. Hokanson v. Commissioner,730 F.2d 1245, 1248 (9th Cir. 1984), affg. a Memorandum Opinion of this Court. As stated by the Circuit Court in Hokanson, "a minimum duration specified in a lease is not the controlling factor in determining the length of the term of the lease for section 38 purposes." Hokanson v. Commissioner,supra at 1249 n.2.In Hokanson, it was held that the taxpayers were not entitled to an investment tax credit on tractor trailers with a useful life of 8 years leased to an unrelated corporation because the lease was not for a term less than 4 years (50 percent of the 8-year useful life of the leased property). The lease in that case had no stated termination date but provided that after 1 year and upon written notice to the other party, either party could cancel the agreement. The lease was held to be in reality an open-ended lease that continued indefinitely until either party affirmatively terminated it since the parties realistically contemplated leasing the equipment for its entire *179 useful life. In reaching this conclusion, the circumstances surrounding the lessor-lessee arrangement were examined to ascertain the true intent of the parties and it was determined that the arrangement "bespeaks substantial and long-term undertakings by each party." Hokanson v. Commissioner,supra at 1249. Although the stated lease terms in the instant case are not open-ended as were the leases in Hokanson v. Commissioner,supra, and Ridder v. Commissioner,76 T.C. 867 (1981), the record shows that petitioner, in his personal capacity and as the person with final authority over the affairs of WSTL, realistically contemplated that the leases would be extended beyond the stated 1-year lease terms. In fact, the clear indication from the record is that the parties to the leases intended that the equipment be leased to WSTL for the useful life of the equipment as long as it served the operational needs of WSTL. The record shows that (1) petitioner automatically renewed expired leases without renegotiation of lease terms; [8] (2) petitioner leased the purchased equipment solely to WSTL; (3) WSTL never actively *180 sought alternate leasing arrangements; (4) petitioner purchased trucks and trailers to meet the particular business needs of WSTL; (5) petitioner sold trucks and trailers that WSTL no longer needed; (6) common control of the lessor and lessee existed; and (7) a tax savings motivated petitioner to establish the leasing arrangement. In 1980, 1981 and 1982, petitioner sold trucks and trailers that his wholly owned corporation could no longer use in its business. The operating needs of WSTL dictated whether or not petitioner sold used equipment at the termination of the lease. This tailoring of petitioner's equipment needs to the particular needs of WSTL, its only lessee, suggests that there was a foreseeable possibility at the time a lease was entered into that the lease would be continued beyond its stated termination date. See Buddy Schoellkopf Products, Inc. v. Commissioner,65 T.C. at 657; see also Highland Hills Swimming Club, Inc. v. Wiseman,supra.[9]
*181 Common control of the lessor and lessee, although not conclusive, is a factor to consider in determining whether the stated term of a lease should be disregarded. See G.W. Van Keppel Co. v. Commissioner,supra at 771-772; Highland Hills Swimming Club, Inc. v. Wiseman,272 F.2d at 180. [10] In the instant case, petitioner was the sole shareholder of the lessee, WSTL, and the sole proprietor of the lessor, Southern Truck Leasing. Petitioner was president of WSTL during 1978 and part of 1979. He was chairman of the board of WSTL during both years and was the final decision maker with respect to WSTL's affairs during all times here pertinent. In leasing property to WSTL, petitioner was in essence dealing with himself. In this leasing arrangement, lessor and lessee had an identity of purpose and the arm's-length bargaining usually present in a lease was absent. The record also reflects that tax savings motivated petitioner to lease the equipment to WSTL. The record shows that WSTL did not have available capital in 1978 to purchase the equipment *182 without borrowing the funds which would probably have required petitioner's guarantee. The record further shows that WSTL could not use the investment tax credits resulting from the equipment purchases since it had already used all available tax credits for 1978 and 1979 and for years to which such credit could be carried back. We conclude that a motivating factor in petitioner's purchase and leasing of the equipment through his sole proprietorship was to effect a tax savings. In light of the evidence presented, we conclude that petitioner has failed to establish that the term of the lease was less than 50 percent of the 5-year useful life of the leased property or that petitioner realistically contemplated terminating the leasing arrangement within a 2-1/2-year period. Hokanson v. Commissioner,supra.
Congress intended to allow investors an investment credit only on property leased for terms that are short in comparison to the useful life of the property. In a short-term lease, the lessor retains business risks rather than passively financing risks with respect to the predominant portion of the useful life of the property. Section 46(e)(3) was *183 enacted to limit the availability of the investment credit to those noncorporate lessors using the property in an active business, and is not applicable to leasing arrangements that are effectively financing arrangements motivated by tax savings purposes. We find that under section 46(e)(3)(B) petitioner is not entitled to any investment credit in 1978 and 1979 with respect to the trucks and trailers he purchased and leased to his wholly owned corporation, WSTL. Decision will be entered for the respondent.
Footnotes
1. The deficiencies resulted from the fact that respondent determined that refunds he had made to petitioners in these years based on petitioners' claim of investment credit carryback from the years 1978 and 1979 were erroneous.↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩
*. Amount credited against tax liability after taking limitations into account.↩
3. The exhibits do nt contain copies of petitioner's actual lease agreements with WSTL but only one representative lease for trucks and one for trailers. therefore, we cannot determine with preciseness how many leases were renewed each year. The record reflects, however, that petitioner's sole proprietorship, Southern Truck Leasing, continued in November 1983 to lease to WSTL equipment purchased in 1978 and 1979 and that leases of all equipment that was not sold by petitioner was renewed.↩
4. In 1979, WSTL leased primarily on a 30-day basis equipment from other common carriers in order to have sufficient equipment available to service its shippers. There is no evidence that WSTL leased from third parties after 1979. At that time petitioner had supplied WSTL with over $6.5 million worth of new equipment.↩
5. Sec. 46(e)(3)↩ is applicable to leases entered into after September 22, 1971.
6. Respondent relies on Peterson v. Commissioner,T.C. Memo. 1982-442, to support this contention. In the Peterson case we held that for purposes of the 50 percent test under sec. 46(e)(3)(B), the stated terms of a lease should be disregarded in determining whether a lease is of indefinite duration if the facts and circumstances show that there is a reasonable certainty that the lessee will continue leasing the property for an indefinite period and that this is the intent of the parties at the time the lease is entered into. In Peterson, members of a partnership who were engaged in the practice of medicine incorporated their practice. The partnership ceased the practice of medicine but leased all of its personal property to the corporation. The individuals who were shareholders in the medical corporation were also partners in the leasing partnership. The lease had a stated term of 3 years and contained no option to renew. After 2 years another lease of the identical property was executed with a stated term of 3 years. At the termination of that lease, a third le ase was executed with a stated term of 3 years. In concluding that the lease was of indefinite duration, we pointed out the following facts: (1) the established practice of the partnership to rent all its personal property to the corporation and to renew all leases; (2) the partnership selected and purchased additional equipment solely to meet the specific needs of the corporation; and (3) the existence of common control of the partnership and the corporation. We also noted that there was no evidence that the corporation ever considered leasing any equipment from anyone other than the partnership and that the tailoring of the partnership's equipment purchases to the particular needs of the corporation strongly suggested that there was no foreseeable possibility of the lease not being continued beyond the stated expiration date.↩
7. Peterson v. Commissioner,T.C. Memo. 1982-442↩.
8. Only the rental charge was sometime changed.↩
9. Respondent, on brief, calls attention to sec. 1.46-4(d)(4), Income Tax Regs., which provides in part: If a noncorporate lessor enters into two or more successive leases with respect to the same or substantially similar items of section 38 property, the terms of such leases shall be aggregated and such leases shall be considered one lease for the purpose of determining whether the term of such leases is less than 50 percent of the estimated useful life of the property subject to such leases. * * * Respondent also notes that Rev. Rul. 76-266, 1976-2 C.B. 10, discusses situations under which lease terms are aggregated if a noncorporate lessor leases equipment for a stated term of less than 50 percent of the equipment's estimated useful life with no option to renew, and upon expiration of the term of the lease, leases the same or similar equipment without renegotiation of the lease. However, respondent states that he is not relying on sec. 1.46-4(d)(4), Income Tax Regs.↩, but on the facts of this case which he contends in substance and reality show that the leases were for an indefinite period at the time they were entered into. We have therefore not discussed petitioner's contention that this regulation as interpreted in respondent's ruling is not applicable to the lease renewals in the instant case.
10. See also Peterson v. Commissioner,T.C. Memo. 1982-442↩, n.8.