**Peter SCHIFF, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**No. 90–5677.**

United States Court of Appeals, Sixth Circuit.

Argued May 3, 1991.

Decided Aug. 15, 1991.

Rehearing and Rehearing En Banc Denied Oct. 1, 1991.

Eugene Jared, Madewell & Jared, Cookeville, Tenn., John W. Nelley, Jr. (argued), Lesa H. Skoney (argued), Charles C. Allen, Nashville, Tenn., for plaintiff-appellant.

Joe B. Brown, U.S. Atty., Nashville, Tenn., Gary R. Allen, Acting Chief, Richard Farber, Sally Schornstheimer, Jordan L. Glickstein (argued), U.S. Dept. of Justice, Appellate Section Tax Div., Carl Q. Carter, U.S. Dept. of Justice, Tax Div., Washington, D.C., for defendant-appellee.

Before KRUPANSKY and BOGGS, Circuit Judges; and COHN, District Judge.*

## I.

COHN, District Judge.

This is an income tax case. Plaintiff, Peter Schiff (Schiff), appeals from a judgment which effectively denied him an investment tax credit (ITC) under § 46(e)(3)(B) of the Internal Revenue Code (Code), 26 U.S.C. § 46(e)(3)(B), on an aircraft which he leased to his 90% owned corporation. For the reasons which follow, we AFFIRM the judgment of the District Court.

## A.

In 1981, Schiff purchased a Gulfstream aircraft (the Gulfstream) that he simultaneously leased to SMEC, Inc. (SMEC), a corporation in which he owned 90% of the stock. Schiff timely filed his individual federal income tax return for the 1981 calendar year and, based on his purchase of the Gulfstream, claimed an ITC. Upon audit, the government disallowed the ITC. The ITC amounted to $184,810.48, which meant Schiff's income taxes due the government for the year 1981 were increased by that amount.

Defendant, the United States (the government), then said, as it does now, that Schiff failed to meet the requirements of § 46(e)(3)(B) and therefore was not entitled to the ITC. In particular, the government said: (1) a noncorporate lessor may not receive an ITC under § 46(e)(3)(B) unless the "term" of the lease is for a period of less than 50 percent of the useful life of the leased property, (2) in the case of a lease between an individual and a corporation he or she controls, the "term" is not the stated period in the lease but, rather, is the period of time the parties to the lease "realistically contemplated" that the lease would remain in effect, and (3) Schiff and SMEC realistically contemplated that the

lease would cover more than 50 percent of the useful life of the Gulfstream.

Schiff appealed the disallowance administratively and was unsuccessful. Schiff then paid the additional income taxes due because of the loss of the ITC and followed up with a claim for a refund, which was also denied. Thereafter Schiff filed a claim for a refund, which was summarily denied by the IRS on June 17, 1988. Schiff then filed suit in the United States District Court for the Middle District of Tennessee for the amount of the claimed refund. The district court upheld the disallowance of Schiff's claimed ITC stating that: (1) the IRS properly applied a realistic contemplation test to § 46(e)(3)(b), and (2) Schiff and SMEC realistically contemplated that the lease of the Gulfstream would extend beyond 50 percent of its useful life. *See Owen v. Commissioner, Internal Revenue Service,* 881 F.2d 832 (9th Cir.1989); *Connor v. Commissioner, Internal Revenue Service,* 847 F.2d 985 (1st Cir.1988).

## B.

Schiff says we should shun the realistic contemplation test and follow *McNamara v. Commissioner,* 827 F.2d 168 (7th Cir. 1987). In *McNamara,* 827 F.2d at 172, the Court of Appeals for the Seventh Circuit held that in a case involving leasing activity that is not primarily tax motivated, a noncorporate lessor is entitled to an ITC if the actual language of the written lease states a term that is less than 50 percent of the property's useful life—unless the government demonstrates the lease is a sham.

As explained *infra,* we decline the invitation to follow *McNamara.* The district court correctly held that the realistic contemplation test applies to situations like this one, in which a noncorporate lessor leases property to a controlled corporation and then seeks an ITC under § 46(e)(3)(B). Moreover, the district court's finding that Schiff and SMEC realistically contemplated that the lease of the Gulfstream would extend beyond 50 percent of the Gulf-

---

* The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

stream's useful life was not clearly erroneous.

## II.

Schiff is the inventor of a heart pump machine. At all relevant times, Schiff served as the president and owned 90% of the stock of SMEC, which developed, manufactured, serviced and sold the heart pump machine and other cardiac assistance equipment. At its peak, SMEC had about 250 heart pump machines in use throughout the country and internationally. The machines were sold primarily to hospitals who used them for bypass open heart surgery, resuscitation, kidney transplants, and in stabilizing patients before and after heart attacks.

SMEC guaranteed service or replacement of a machine in 24 hours. As a result, it was necessary for Schiff to respond to a call from anywhere in the country within a few hours. In order to support this service guarantee, SMEC bought an aircraft in 1974. As the demands of the business increased, the use and needs of the aircraft increased, and SMEC traded in and upgraded the aircraft for better models in 1974, 1975, 1977, and 1979.

In 1981, however, Schiff purchased the Gulfstream personally and then leased it to SMEC. Importantly, SMEC signed as guarantor on the purchase of the Gulfstream.[1] At the time when Schiff purchased the Gulfstream, he had been negotiating the sale of SMEC. The negotiations eventually fell through. In fact, Schiff had been trying to sell SMEC since 1976 but all his efforts proved unsuccessful until an eventual sale of SMEC in 1985.

The Gulfstream had a useful life of five years. The lease between Schiff and SMEC and Schiff provided for a two year term with a defined termination date and no option to renew.

Upon the termination of the lease, SMEC and Schiff entered into a second two year lease. The provisions of the second lease were virtually identical to those in the first lease.

## III.

### A.

The issue is one of first impression in this circuit. During 1981, the year in question, the Code, as a general rule, allowed a credit against income tax for qualified investments in certain depreciable property. In providing a credit to a taxpayer who purchased qualifying depreciable property, Congress imposed certain limitations on noncorporate taxpayers who leased property to other parties. Section 46(e)(3) of the Code provided in this regard as follows:

(e) LIMITATIONS WITH RESPECT TO CERTAIN PERSONS.

\*  \*  \*  \*  \*  \*

(3) Noncorporate lessors.—A credit shall be allowed ... to a person which is not a corporation with respect to property of which such a person is a lessor only if—

(A) the property subject to the lease has been manufactured or produced by the lessor, or

(B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, and for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum total of the deduction with respect to such property ... exceeds 15 percent of the rental income produced by such property.

Schiff and the government stipulated at trial that the latter of the two conditions contained in subparagraph (B) is not in issue, namely that the expense associated with the Gulfstream amounted to at least

---

1. At trial Schiff testified:

Q: ... Could you explain to the court why the corporation signed the guaranty of purchase?
A: ... And my recollection is they wanted a personal financing statement. I never had any and I have never given any to anybody.

So they asked if I would mind having, since SMEC they could put their hands on—they had seen tax reports from SMEC—would I mind if they used SMEC as a co-signer....
Q: So SMEC signed as a co-signer for the purchase of the aircraft?
A: Yes.

15 percent of the rental income produced by it. Thus, the sole issue at trial was whether Schiff had established that the term of the lease, taking into considerations options to renew, was less than 50 percent of the Gulfstream's useful life.

### B.

The lease states, on its face, it was for a two year term; and there is no option to renew. Two years was clearly less than 50 percent of the Gulfstream's five year useful life. The government did not dispute that the literal term of the lease covered less than half of the Gulfstream's useful life. However, the government argued for the realistic contemplation test to determine whether the lease was in actuality for an indefinite term. This test provides that, under § 46(e)(3)(B), the true term of a lease should be determined by reference to whether the parties realistically contemplated that the lease would last longer than 50 percent of the property's useful life. *Owen*, 881 F.2d at 834 (citing *Hokanson v. Commissioner*, 730 F.2d 1245, 1249 (9th Cir.1984)).

The origin of the realistic contemplation test, as applied to § 46(e)(3)(B), can be traced to the Tax Court decision in *Ridder v. Commissioner*, 76 T.C. 867 (1981) in which an employee leased a tractor-truck to his employer. The lease was open-ended and did not have a fixed termination date. The Tax Court denied the employee an ITC under § 46(e)(3)(B) in part because he made no evidentiary showing that he and the employer realistically contemplated the lease would terminate within three years, that is, 50 percent of the tractor-truck's six year useful life. *Ridder*, 76 T.C. at 875.[2] Since *Ridder*, the realistic contemplation test has been applied by many courts. *Peterson v. Commissioner*, 44 T.C.M. (CCH) 1215 (1984); *Hokanson*, 730 F.2d at 1248; *Sanders v. Commissioner*, 48 T.C.M.

(CCH) 1215, 1219–20 (1984), *aff'd without opinion*, 770 F.2d 174 (11th Cir.1984); *Harvey v. Commissioner*, 52 T.C.M. (CCH) 207, 209 (1986); *Connor, supra; McEachron v. Commissioner*, 873 F.2d 176, 177 (8th Cir. 1988); *Owen*, 881 F.2d at 834; *Borchers v. Commissioner*, 95 T.C. 82 (1990).

The facts in *Connor, supra*, most closely parallel those at issue here. In *Connor*, 847 F.2d at 987–89, the Court of Appeals for the First Circuit applied the realistic contemplation test where, as here: (1) the lease was executed by controlling stockholder and his controlled corporation, (2) the lease had a fixed termination date with no option to renew, and (3) the stated term of the lease was for a period of less than 50 percent of the useful life of the leased property. The Court of Appeals held that the taxpayers were not entitled to an ITC under § 46(e)(3)(B) since they failed to show that the leases were actually for less than 50 percent of the useful life of the leased property. *Connor*, 847 F.2d at 990. Thus, the realistic contemplation test places the initial burden on the taxpayer who must show that, at the time of the lease's execution, there was not a reasonable certainty that the lessee would continue leasing the property beyond the period stated in the lease.

### C.

In *McNamara*, 827 F.2d at 172, the Court of Appeals for the Seventh Circuit rejected the realistic contemplation test and interpreted § 46(e)(3)(B) as requiring the IRS to accept at face value "the stated lease term in a written lease," at least where (1) the "leasing activity ... is not primarily tax motivated" and (2) "the Commissioner can[not] demonstrate that the lease is a 'sham,' i.e., that there has been a real shifting of all economic risk associated with the lease property from the lessor to the lessee."[3]

---

**2.** In actuality, the lease terminated within the three year period. The tractor-truck was demolished in an accident in its second year of service. *Ridder*, 76 T.C. at 872.

**3.** Even if we were to apply *McNamara's* reasoning, it is not at all certain that Schiff was enti-

tled to the ITC. Under *McNamara*, a noncorporate lessor is not entitled to an ITC if there has been a real shifting of all the economic risk associated with the leased property from the lessor to the lessee. Here, SMEC as guarantor on the loan made by Schiff to purchase the

This rule gives controlling weight to the stated term of a lease between parties like Schiff and SMEC that are not dealing at arm's length. As explained in *Connor*, 847 F.2d at 988:

> [T]o make the written terms of a lease virtually determinative of the duration question is to risk unfairness and manipulation by permitting different parties with identical long-term expectations to qualify for the ITC or not, depending upon the extent to which those expectations are reduced to writing.

Moreover, unless the government affirmatively demonstrates the lease is a sham, the *McNamara* rule allows the tax consequences of the lease to be governed by form rather than substance. It is fundamental principle the tax consequences of a transaction are to be governed by its substance, *not* its form. *Gregory v. Helvering*, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935). *See Jaques v. Commissioner*, 935 F.2d 104, 107 (6th Cir.1991) (courts must look beyond labels and self-serving declarations when applying federal tax law).

██ The *McNamara* rule is also inappropriate because it shifts the burden of proof to the government whenever parties, even if they are not dealing at arm's length, have executed a mechanically perfect lease. Requiring the government to prove that a lease is sham, before the taxpayer has made any meaningful showing that the lease is to last no longer than 50 percent of the leased property's useful life, ignores the thrust of Rule 142(a), Tax Court Rules of Practice and Procedure, 26 U.S.C. foll. § 7453 (taxpayer bears burden of proof in protesting deficiency assessed by Commissioner). Tax deductions and credits are a matter of legislative grace, and a taxpayer must clearly establish entitlement. *Anselmo v. Commissioner*, 757 F.2d 1208, 1211 n. 2 (11th Cir.1985) (citing *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934)). The realistic contemplation test, in the circumstances of leased property, one party under the control of the other, and the ITC, is appropriate because it places the burden of proof squarely where it should be—on the taxpayer.

Schiff argues that the realistic contemplation test cuts against the grain of the legislative intent behind § 46(e)(3)(B). In support, Schiff relies heavily on the Tax Court decision in *Ridder*. There the Tax Court said:

> In drafting section 46(e)(3)(B), Congress ... decided to impose two hard-and-fast tests, one of which petitioner herein has failed. In effect, Congress chose a more easily administered approach (which, for taxpayers, provides predictability) and sacrificed some small measure of perfect equity.

76 T.C. at 876. Schiff misconstrues the meaning of this language in arguing that it supports his contention that we should look primarily to the written language of the lease in determining its term. In emphasizing the use of the "hard-and-fast" test, the Tax Court meant no more than that Congress did not want the courts and the IRS to examine the motives of a lessor. The "hard-and-fast" test as expressed in *Ridder* merely suggests that a taxpayer's entitlement to an ITC hinges on a more straight-forward determination as to the length of a lease's term. *Connor*, 847 F.2d at 988. In making such a determination, neither the language of § 46(e)(3)(B) nor its legislative history require the use of any particular test. How the lease's term is to be determined is still an open question.

Review of legislative history of § 46(e)(3)(B), *see* H.R.Rep. No. 92–533, 92d Cong., 1st Sess. 29, reprinted in 1971 U.S.Code Cong. & Admin.News 1825, 1844, discloses nothing to suggest that Congress would have disapproved of use of the realistic contemplation test. The test effectuates Congress' goal in enacting § 46(e)(3)(B), namely preventing noncorporate lessors from receiving tax benefits from arrangements motivated largely by tax reasons.[4] The test seeks to uncover

---

Gulfstream subjected itself to a significant financial risk.

**4.** The House Report accompanying the enactment of § 46(e)(3)(B) explains:

leases which, in spite of formal language as to term, actually have no definite term. Leases with no definite term that are between a controlling stockholder and his or her controlled corporation are often likely to be motivated by tax reasons. *Connor,* 847 F.2d at 987.

### D.

For the reasons stated above, a noncorporate lessor who leases depreciable property to a corporation he or she controls is not eligible for an ITC under § 46(e)(3)(B) unless there is a showing that the parties to the lease at the time of execution realistically contemplated that the lease's term would not extend beyond 50 percent of the leased property's useful life.

### IV.

Applying the realistic contemplation test, the district court found that Schiff failed to show that he and SMEC realistically contemplated that the lease would last for less than half of the Gulfstream's useful life. Our role is limited to a determination whether that finding was "clearly erroneous," that is, whether we are left with "the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Hokanson,* 730 F.2d at 1249.

### A.

The Gulfstream was purchased with borrowed funds. SMEC guaranteed repayment of the loan. Thus, it has a financial risk in the Gulfstream. It is fair to conclude that SMEC would not assume such a risk unless it could have access to the Gulfstream for as long as it had a need for its use. Under this circumstance, the stated term was irrelevant.

Schiff purchased the Gulfstream specifically to satisfy the needs of SMEC; the Gulfstream was integral to its business needs. Since Schiff owned substantially all of SMEC's stock, it is a reasonable inference that the lease would continue in effect so long as SMEC had need of and Schiff continued as SMEC's principal owner. *See Harvey,* 52 T.C.M. (CCH) at 210 (lessor's control of lessee is strong, although not determinative, evidence that lease has indefinite duration despite lease's literal language).

Schiff testified at trial that he would not have refused to continue to lease the Gulfstream to SMEC at the end of its stated two-year term if SMEC still had need for it. And, in fact, at the expiration of the initial term, Schiff and SMEC entered into a second lease essentially identical to the first lease. *See Peterson,* 44 T.C.M. (CCH) at 677–680 (renewal of lease without negotiation indicates that the lease's duration was indefinite).[5]

Moreover, the two-year term stated in the initial lease was determined by Schiff's attorney and tax accountant. Standing alone this fact would have little probative weight. Taken together with the other evidence regarding the lease, it contributes to the inference that the two-year term did not reflect a determination by Schiff that SMEC was to use the Gulfstream for only two years.

Last, there is no evidence that Schiff leased property to anyone other than

---

Your committee is concerned, however, that the restoration of the credit could once again make leasing arrangements motivated largely by tax reasons quite attractive. To prevent such a result your committee believes that it is appropriate to limit the extent to which the credit is available to individual lessors (and other noncorporate lessors).

\* \* \* \* \* \*

The bill provides that two conditions must be satisfied for the credit to be available to a noncorporate lessor.... If these conditions exist, your committee believes that the lease is quite likely to represent a normal business transaction of the lessor rather than a passive investment entered into for the purpose of sheltering other income.

H.R.Rep. No. 92–533, 92d Cong., 1st Sess. 29, reprinted in 1971 U.S.Code Cong.Admin.News 1825, 1844.

**5.** Schiff testified that he recalled negotiating the renewal of the lease. However, the language of the two leases was virtually identical, a strong indication that any negotiations that may have occurred were *pro forma*.

SMEC. *Sanders*, 48 T.C.M. (CCH) at 1220 (leasing equipment to only one party is evidence that lease has an indefinite duration).

Simply put, there is no warrant for us to even suggest, much less find, that the district court was clearly erroneous when it concluded Schiff and SMEC realistically contemplated that the lease was to last longer that 50 percent of the Gulfstream's useful life.

### B.

Finally, Schiff argues he realistically contemplated the lease would not be renewed at the end of its initial two year term. Schiff relies heavily on the undisputed fact that at the time the lease was signed he had been engaged in serious negotiations as to the sale of SMEC. However, Schiff began as early as 1976 his attempts to sell SMEC, and he had no intention of selling SMEC until he received an offer that was entirely satisfactory to him. Thus, at the time the lease was signed in 1981, the sale of SMEC was by no means imminent. The fact that SMEC was up for sale did not prevent the district court from reasonably concluding that Schiff and SMEC realistically contemplated that the lease would last longer than 50 percent of the Gulfstream's useful life.

### V.

In sum, § 46(e)(3)(B) grants an ITC to certain noncorporate lessors who lease depreciable property. In order to receive an ITC under § 46(e)(3)(B), a noncorporate lessor must, among other things, show that the term of the lease was for a period of less than 50 percent of leased property's useful life. In order to make such a showing, a noncorporate lessor who leases depreciable property to a corporation he or she controls must do more than demonstrate that the lease's stated term is for a period less than 50 percent of the property's useful life. Instead, the noncorporate lessor must show that, when executing the lease, he or she realistically contemplated the lease would remain in effect for less

than 50 percent of the property's useful life. Here, the district court held that Schiff, when he executed the lease with his controlled corporation, SMEC, realistically contemplated that the lease as to the Gulfstream would cover more than 50 percent of its useful life. The district court's holding as to Schiff's realistic contemplation was not clearly erroneous. Therefore, he is not entitled to an ITC under § 46(e)(3)(B).

KRUPANSKY, Circuit Judge, dissenting.

I respectfully dissent in the disposition of the panel majority for the reasons articulated in the well-reasoned opinion of the Seventh Circuit in *McNamara v. Commissioner*, 827 F.2d 168 (7th Cir.1987).