Albert E. SCHUMACHER and Eunice A. Schumacher, Plaintiffs–Appellants,

v.

The UNITED STATES of America, Defendant–Appellee.

No. 89–2281.

United States Court of Appeals, Tenth Circuit.

April 25, 1991.

Gerald E. Bischoff of Dubois, Caffrey, Cooksey, & Bishoff, P.A., Albuquerque, N.M., for plaintiffs-appellants.

Joel A. Rabinovitz, Tax Div., Dept. of Justice, Washington, D.C. (William L. Lutz, U.S. Atty., Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen and Ann B. Durney, Tax Div., Dept. of Justice, Washington, D.C., with him on the brief), for defendant-appellee.

Before HOLLOWAY, Chief Judge, ALDISERT * and EBEL, Circuit Judges.

ALDISERT, Circuit Judge.

In this case of statutory construction, the issue for decision is whether the taxpayers, lessors of personal property, have shown that the rentals of their property met the requirements of Internal Revenue Code § 46(e)(3)(B), that the rentals or leases be for less than 50% of the useful life of that property, thereby entitling them to an investment tax credit. We hold that the taxpayers did not meet their burden of showing entitlement to the credit and therefore affirm the judgment of the district court denying their claim for an income tax refund.

* Ruggero J. Aldisert, United States Circuit Judge

Jurisdiction was proper in the district court based on 28 U.S.C. § 1346(a)(1). Jurisdiction on appeal is proper based on 28 U.S.C. § 1291. Appeal was timely filed under Rule 4(a), F.R.A.P.

I.

At issue is an interpretation of section 38 of the Internal Revenue Code that was in effect during the relevant years 1983 and 1984. This section provided for an investment tax credit equal to 10% of the cost of qualified property purchased, but for non-corporate lessors to be eligible for the credit, section 46(e)(3) required that the terms of the leases had to be less than 50% of the property's useful life.

Albert and Eunice Schumacher (referred to as the taxpayers) purchased several pieces of construction equipment in 1983 and 1984, which they then rented to their wholly-owned corporation and to third-party lessees. All of the rental agreements were verbal and did not contain any termination dates or other time restrictions. The property was rented on an "as needed" basis; so long as the lessee needed the property, it could continue to rent it. The taxpayers were unaware of the Code requirement that the terms of the leases be less than 50% of the property's useful life in order to take the investment tax credit deduction.

The taxpayers claimed investment tax credits for the leased property on their 1983 and 1984 tax returns, but the Commissioner disallowed the credits and asserted deficiencies. The taxpayers then paid the alleged deficiencies and timely filed administrative claims for refund, which were denied. They then brought suit in district court for refund.

The district court found that there were no written leases for the property in question; that the property was rented on an "as needed" basis; that the leases had no termination dates or other time restrictions; and that therefore, the leases were

for the Third Circuit, sitting by designation.

for an indefinite period of time. The court concluded, accordingly, that the taxpayers had not met their burden of proving that the leases were for less than 50% of the useful life of the property and determined that the taxpayers were not entitled to the investment tax credit with respect to the property and denied the taxpayers' claim for refund. The taxpayers appealed.

## II.

■ Whether the leases of the taxpayers' property were for less than 50% of the useful life of the property is a question of fact subject to the clearly erroneous standard of review. *Hokanson v. Comm'r*, 730 F.2d 1245, 1249 (9th Cir.1984). If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–574, 105 S.Ct. 1504, 1511–1512, 84 L.Ed.2d 518 (1985) (citations omitted).

■ The general rule in tax law is that tax credits are a matter of legislative grace, and taxpayers bear the burden of clearly showing that they are entitled to them. *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934); *see also* Rule 142(a), Tax Court Rules of Practice and Procedure, 26 U.S.C. foll. § 7453; *Connor v. Comm'r*, 847 F.2d 985, 989 (1st Cir.1988) (collecting cases).

## III.

During 1983 and 1984, section 46(e)(3)(B) of the Internal Revenue Code of 1954 permitted an investment tax credit to noncorporate lessors only if, among other requirements, "the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property."

Section 46(e) provided in relevant part: (3) *Noncorporate lessors.*—A credit shall be allowed by section 38 to a person which is not a corporation with respect to the property of which such person is the lessor only if—

. . . .

(B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property

. . .

The purpose of the limitation is explained in the Senate Report accompanying the enactment of the section:

The committee is concerned, however, as was the House that the restoration of the credit could once again make leasing arrangements motivated largely by tax reasons quite attractive. The committee agrees with the House that it is appropriate to impose limitations on the availability of the investment credit to individual lessors (and other noncorporate lessors).

. . . .

[T]he bill provides, in general, for the allowance of the credit in the case of short term leases since in these cases the leasing activity constitutes a business investment, i.e., a financing arrangement.

S.Rep. No. 92–437, 92d Cong., 1st Sess. at 43–44 (1972–1 Cum.Bull. 559, 583), *see* H.R. Rep. No. 92–533, 92d Cong., 1st Sess. at 29 (1972–1 Cum.Bull. 498, 513) (reprinted in 1971 U.S.Code Cong. & Admin.News, p. 1825).

■ Although tax avoidance and "business activity" are prominently mentioned in the legislative history, the statute itself is technical and objective in nature; the availability of the credit does not turn on a subjective determination of whether the taxpayers were in fact passive investors. Rather, "Congress chose two hard and fast tests, sacrificing some degree of equity for predictability and ease of administration. Where ... the taxpayers do not meet the literal requirements of the Code, the credit should be denied." *Hokanson v. Comm'r*, 730 F.2d 1245, 1250 (9th Cir.1984) (citation

omitted); *Ridder v. Comm'r*, 76 T.C. 867, 876 (1981).

## IV.

■ Certain settled precepts guide our analysis. A lease qualifies under section 46(e)(3)(B) only if its term is less than 50% of the useful life of the property. *Ridder*, 76 T.C. at 875. The length of the lease must be determined at the time the lease or rental begins; it cannot be based on subsequent events. *Hoisington v. Comm'r*, 833 F.2d 1398, 1404 (10th Cir.1987); *Hokanson*, 730 F.2d at 1248; *Ridder*, 76 T.C. at 872–73; *see also Connor v. Comm'r*, 847 F.2d 985, 989 (1st Cir.1988). That the taxpayers may not have actually rented the equipment for more than 50% of the property's life is not controlling; it is only relevant for the purpose of determining the intention of the parties at the beginning of the lease. That at the time the rentals began they might have lasted for less than 50% of the property's life is not determinative; there must have been a "fixed intention" that the leases be for less than 50% of the useful life of the property. *Hoisington*, 833 F.2d at 1405. Because investment credits are matters of legislative grace, the burden is on the taxpayers to show entitlement. *See New Colonial Ice Co.*, 292 U.S. at 440, 54 S.Ct. at 790.

■ A lease for an indefinite term does not qualify under section 46(e)(3)(B). *Ridder*, 76 T.C. at 875. Other courts have held that when a lease does not show a termination date on its face, the court should look to see whether the parties realistically contemplated that the lease would cover less than 50% of the useful life of the property. *See McEachron v. Comm'r*, 873 F.2d 176, 177 (8th Cir.1988); *Connor*, 847 F.2d at 989 (1st Cir.); *Hokanson*, 730 F.2d at 1248 (9th Cir.). We adopt the realistic contemplation test used by our sister courts.

## V.

■ Our task is to apply these precepts to the relevant testimony adduced at the hearing and inquire if the court erred in determining that the taxpayers failed to meet their burden of proving entitlement to these tax credits. In response to the question of whether "there [was] any way to determine, at the first point in time that the equipment was rented, how long that rental would last," the taxpayer stated that "there was no way to determine, and that you don't know. It [the length of the lease] depended how much work you got." Transcript of Proceedings at 30. In the same vein, the following colloquy took place between the district court and Mr. Schumacher.

> THE COURT: What she is asking you, if they are willing to pay your price, you are in the rental business, why shouldn't you rent it to them for four years?
>
> THE WITNESS: Well, probably—
>
> THE COURT: If you are making money, that's what you want to do.
>
> THE WITNESS: Yeah, I probably would . . .

*Id.* at 29.

Under these circumstances we cannot conclude that the court erred in determining that the taxpayers failed to meet their burden of proving that they realistically contemplated, at the time they entered into the rental agreements, that the leases would be for less than 50% of the useful life of the property, and thus their entitlement to the investment tax credit.

■ At the very minimum the taxpayers had to show two things: (1) the useful life of the equipment; and (2) direct or indirect evidence that the lessors intended, at the time of the rentals, that the total rentals would not exceed 50% of that useful life. Under the best case scenario, the taxpayers' testimony disclosed only that the rentals were for indefinite periods. This is insufficient under the explicit congressional directive that requires proof that the rentals would in no case exceed 50% of the rental property's useful life.

The Schumacher oral rental agreements had no stated termination dates but presumably allowed either party to cancel on one day's notice. This brings this case very close to the facts in *Ridder v. Comm'r*, 76 T.C. 867 (1981), where the

taxpayer entered into a written lease that had no termination date but allowed either party to cancel on thirty days' notice. The Tax Court noted that the lease was for an indefinite term and that although the lease might have ended within the first 50% of the property's useful life, there was no way to determine this circumstance at the time of entering into the lease. Because there was no evidence that the parties reasonably contemplated that the lease would end within that time, the taxpayer was denied credit.

The same reasoning applies in this case. Where, as here, there is no evidence that the taxpayers realistically contemplated at the time the leases were entered into that they would end within 50% of the useful life of the property, such a termination date is a mere possibility. A mere possibility is not enough, however, because it was equally possible that the leases would last longer. Given the burden on the taxpayers to show their realistic contemplation and thus their entitlement to the investment tax credit, the failure to fulfill this obligation left the district court with little room for a determination in their favor.

## VI.

The taxpayers seek a jurisprudential end run around the contemplation-of-the-parties test. They argue that we should adopt the "economic risks and obligations" analysis of the Court of Appeals for the Seventh Circuit in *McNamara v. Comm'r*, 827 F.2d 168 (7th Cir.1987). There, the court held that "[a]t least in cases involving leasing activity that is not primarily tax motivated, where the stated lease term in a written lease document satisfies the 50 percent requirement, that document should be respected, and unless the Commissioner can demonstrate that the lease is a 'sham' ... the lessor is entitled to claim an investment tax credit for the property...." 827 F.2d at 172. But the court explained that it was confining its decision to the fact situation before it and emphasized that there was a written agreement as to the lease term. We recognized in *Hoisington v. Comm'r*, 833 F.2d at 1404, that the *McNamara* case

was limited to its facts. *See also McEachron*, 873 F.2d at 177. In the case before us, there were no written agreements, no explicit verbal agreements that would limit the rentals to lease terms of less than 50% of the property's lives. We do not have before us the factual underpinnings that prompted the *McNamara* court to emphasize the "economic risks and obligations" analysis and accordingly decline the invitation to apply that test in this case.

The seemingly harsh result of the congressional mandate that denies credit to those taxpayers who do not fulfill the stated test is not without an ameliorative factor. The statute permits those taxpayers to pass on the credit to their lessees, thus permitting the lessors to charge larger rental payments in return. Sec. 48(d)(1); *see* S.Rep. No. 92–437, *supra* at 8 (1972–1 Cum.Bull. at 583); *Connor*, 847 F.2d at 988. The taxpayers here even admitted that they could have passed on the credit, Transcript of Proceedings at 23–23, and their wholly-owned corporation could have used it. Therefore, upon close analysis, any seeming inequity to these taxpayers is evanescent. They have been denied a tax credit as lessors, to be sure, but given their ownership of the lessee entity to which the credit could have been passed, any denial of credits here results from a self-inflicted wound.

The proper test in this case involving unwritten rental agreements, therefore, is not whether the parties have shifted the economic risks from the lessor to the lessee; rather, the taxpayers had the burden of showing that at the time the parties entered into the lease, they realistically contemplated that the lease would cover less than 50% of the property's useful life. The district court in this case determined that the taxpayers failed to meet that burden. On review, we cannot say that the court erred.

## VII.

We have considered all of the contentions of the taxpayers in this appeal and find

them unpersuasive. The judgment of the district court is AFFIRMED.